**Daryl James MITCHELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–04–00885–CR.**

Court of Appeals of Texas,
San Antonio.

Dec. 21, 2005.

Discretionary Review Refused
March 29, 2006.

Michael D. Robbins, Asst. Public Defender, San Antonio, for appellant.

Enrico B. Valdez, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Sitting: SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

Daryl James Mitchell was convicted of murder and sentenced to ninety-nine years imprisonment. He appeals, bringing issues of denial of the right to confrontation, denial of the requested jury charge on sudden passion, and admission of his oral statement made while in custody.

### BACKGROUND

On March 16, 2002, Mitchell and his girlfriend Corne Latre Williams were in their apartment when an argument arose between them. As the altercation escalated, Williams telephoned the 9–1–1 operator, saying that her boyfriend was trying to kill her. During her conversation with the 9–1–1 operator, a gun went off. Mitchell then picked up the phone and confessed to the operator that he had killed Williams as she was attempting to leave the apartment. Williams died at the scene of the incident from a gun shot wound in her neck. Subsequently, Mitchell was arrested as a murder suspect.

### THE AUTOPSY REPORT AND CONFRONTATION CLAUSE

Mitchell argues that his right to confrontation was violated when the trial court permitted Dr. Kimberly Molina to testify about her review of the autopsy report made by Dr. DeMaio, who did not testify. Dr. Molina, an assistant medical examiner with the Bexar County Medical Examiner's office, testified, over objection, about the report and based on that report, gave her opinion about the cause of Williams's death. Because Dr. DeMaio was not present to testify, Mitchell argues that his right to confrontation was violated.

■ The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees the right of an accused to be confronted with the witnesses against him. U.S. CONST. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 67, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court held that testimonial hearsay evidence violates the Confrontation Clause unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine him. Thus, the threshold question here is whether the autopsy report is testimonial or non-testimonial in nature. *See id.* Although the Court declined to provide a comprehensive definition of testimonial statements, it stated that "testimonial statement applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations." *Id.*

■ Basing her opinion on the autopsy report, Dr. Molina testified about the cause of William's death. The autopsy report set forth matters observed pursuant to a duty imposed by law. *See Butler v. State*, 872 S.W.2d 227, 237–38 (Tex.Crim. App.1994) (citing TEX.R. EVID. 803(8)(B)). It is not testimony at a preliminary hearing, before a grand jury, or at a former trial. *See Crawford*, 541 U.S. at 68, 124 S.Ct. 1354. It is not a statement given in response to police interrogatories. *See id.* Instead, for purposes of Texas Rule of Evidence 803, it is considered a public record or business record.[1] *Denoso v.*

1. At trial, the State laid the foundation for the autopsy report being admitted as either a

*State*, 156 S.W.3d 166, 180 (Tex.App.-Corpus Christi 2005, pet. ref'd) ("Generally, autopsy reports are admissible pursuant to the public record and business record exceptions to the hearsay rule."); *see also Butler*, 872 S.W.2d at 238 (holding that an autopsy report is admissible under the public records exception to the hearsay rule). And, business records are nontestimonial. *See Crawford*, 541 U.S. at 56, 124 S.Ct. 1354 (stating that "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial— for example, business records or statements in furtherance of a conspiracy"); *Eslora v. State*, No. 04-04-00112-CR, 2005 WL 763233, at *4 (Tex.App.-San Antonio 2005, pet. ref'd) (not designated for publication) (holding that "business records are nontestimonial"). Therefore, because the autopsy report does not fall within the categories of testimonial evidence described in *Crawford*, we hold that it is nontestimonial. *See Denoso*, 156 S.W.3d at 182 (holding that because the autopsy report was non-testimonial in nature, the rule articulated in *Crawford* was not applicable); *see also Eslora*, 2005 WL 763233 at *4 (holding that medical records are non-testimonial).

Mitchell further argues that even if Dr. DiMaio's autopsy report is not testimonial evidence, "the testimony of Dr. Molina is testimonial evidence, by any definition. Since [Mitchell] was denied the right to confront and cross-examine Dr. DiMaio, the testimony of Dr. Molina should have been disallowed." We disagree. Although Dr. Molina's testimony was testimonial in nature, because she was present at the trial and cross-examined by defense counsel, Mitchell's right to confrontation was not violated. We overrule this issue.

EXTRANEOUS OFFENSES

In his next issue, Mitchell argues that the trial court erred in denying his motion for mistrial regarding the admission of extraneous offenses during the punishment phase. According to Mitchell, because "the procedural scheme encompassed by article 37.07(a) of the Code of Criminal Procedure is still subject to Sixth Amendment review" and the complainant was not present to testify, the denial of his motion for mistrial was constitutional error.

At the punishment phase, Officer Haag testified that in 1994, he was dispatched for a disturbance with a gun. The complainant in that incident, Cynthia Mendez, was not present to testify at this trial. Officer Haag testified that upon his arrival at the scene, he placed Mitchell under arrest for aggravated assault with a deadly weapon, which resulted in an assault conviction. When the defense attorney objected to Officer Haag's testimony, the trial court sustained the objection and instructed the jury to disregard the officer's testimony with respect to the assault. However, the trial court denied Mitchell's motion for mistrial.

In addition, Officer Anthony Hill testified about being dispatched for a disturbance call in 1993. Cynthia Mendez was also the complainant in that incident. Officer Hill testified that upon his arrival, he spoke with Mendez and observed a small cut on her finger which appeared to be inflicted by a knife. When the defense counsel objected to Officer Hill's testimony on hearsay grounds, the trial court sustained the objection, instructed the jury to disregard, but denied the motion for mistrial. Officer Hill also testified that he

business record or a public record. Defense counsel objected to the admission of the report, citing both the hearsay rule and the

Confrontation Clause. The trial court overruled the objection and admitted the report in evidence.

arrested Mitchell for aggravated assault with a deadly weapon.

■ When the trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for mistrial, the issue is whether the trial court abused its discretion by denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex.Crim.App.2004). Only in extreme circumstances, in which the prejudice is incurable, will a mistrial be required. *Id.* at 77. Such a circumstance exists when the conduct is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Id.* Generally, however, an instruction to disregard cures any prejudicial effect. *See id.* Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required. *Id.*

■ Because the testimony of the officers consisted of rather brief descriptions of Mitchell's arrests in 1993 and 1994, without details and surrounding circumstances of the arrests, and because the jury was instructed to disregard such testimony, the trial court did not abuse its discretion in denying the motions for mistrial. An instruction to disregard is presumed to cure any harm, which it did in this case. *See id.* Mitchell's issue is overruled.

### Admission of the Oral Statement

Mitchell further argues that the trial court erred in admitting his oral statement made as the result of a custodial interrogation. He asserts that his oral statement made to the police in 1994 was inadmissible because it was not recorded pursuant to article 38.22, section 3(a) of the Texas Code of Criminal Procedure. In response, the State argues that Mitchell did not timely object to the introduction of the oral statement and, thus, waived the issue. We agree with the State.

At the punishment phase of the trial, Officer Eugene Valdez, an officer with the narcotics unit of the San Antonio Police Department, testified about locating and arresting Mitchell at an address given to him by a confidential informant. Upon arrival on the scene, Officer Valdez found crack cocaine, marihuana, a .38 special handgun, cash, and a bullet proof vest. He testified that Mitchell admitted that the above items belonged to him, stating the following:

Prosecutor: "While at the scene, did anyone tell you who the drugs belonged to?"

Officer Valdez: "Just Daryl [Mitchell]."

Prosecutor: "Okay. So, Daryl Mitchell told you?"

Officer Valdez: "Yeah."

Prosecutor: "And what did he tell you?"

Officer Valdez: "He said that everything in there belonged to him, all the narcotics and the gun and the vest."

Prosecutor: "Okay. Now, let's take it step by step. You said the narcotics and the gun ..."

Mitchell's statements to the police were not in writing and were not recorded by audio or video. At some point during Officer Valdez's testimony, the defense attorney objected to Mitchell's statements made while he was in custody. The trial court overruled the objection, denied the request for an instruction to disregard, and denied the motion for mistrial.

■ Under the Texas Rules of Appellate Procedure, "as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a *timely* request, objection, or motion ..." Tex.R.App. P. 33.1(a)(1) (emphasis added). An objection should be made as soon as the ground for objection becomes appar-

ent. *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex.Crim.App.1997). If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived. *Id.* Here, although Mitchell objected to previous similar questions to Officer Valdez, and also objected later, he failed to object each time the question was presented to Officer Valdez. And, Mitchell did not obtain a running objection. A party "must object each time the inadmissible evidence is offered or obtain a running objection. An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Valle v. State*, 109 S.W.3d 500, 509 (Tex.Crim.App.2003). Here, because Mitchell failed to timely object each time Officer Valdez testified about the oral statements, he failed to preserve the issue for appeal.

## JURY INSTRUCTION

Finally, Mitchell argues that the trial court erred in denying his requested sudden passion jury instruction.

■ A defendant has the right to a jury instruction on any defensive issue that has been raised by the evidence, regardless of whether the evidence is weak or strong, unimpeachable or contradicted, and regardless of what the trial court may think about its credibility. *Granger v. State*, 3 S.W.3d 36, 38 (Tex.Crim.App. 1999); *Trevino v. State*, 100 S.W.3d 232, 238 (Tex.Crim.App.2003). On the other hand, if the evidence, viewed in the light most favorable to the defendant, fails to raise a defensive issue, the defendant is not entitled to an instruction on the issue. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim.App.2001). According to the Texas Penal Code:

At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

TEX. PEN. ANN.CODE § 19.02(d) (Vernon 2003).

■ When reviewing a sudden passion jury charge, our duty is "to look at the evidence supporting that charge, not ... the evidence refuting it." *Trevino*, 100 S.W.3d at 239. The "mere fact that a defendant acts in response to the provocation is not sufficient to warrant a charge on sudden passion. Instead, there must be some evidence that the defendant was under the immediate influence of sudden passion." *Id.* at 241. Sudden passion means "passion directly caused by and arising out of provocation by the individual killed ... that arises at the time of the offense and is not solely the result of former provocation." TEX. PEN. ANN.CODE § 19.02(a)(2) (Vernon 2003). It is not enough that the defendant act with sudden passion; the sudden passion must arise from "adequate cause." *See id.* § 19.02(d). Adequate cause is "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1).

■ Mitchell's evidence in support of the jury charge on a sudden passion is that:

... he and Latre [Williams] had an argument that got physical just prior to her death. She started hitting [Mitchell], putting her fingernails into his arm and pulling hair out of his head. She pushed him over and started running

out of the apartment. She called 911, and [Mitchell] noticed that she had a gun pointed at him. They started fighting, and the gun went off, killing [Williams].

We agree with the State that there is no evidence that Mitchell acted under a sudden passion. Mitchell points to evidence that Williams was very upset when they had an argument, during which she became physically violent. However, Mitchell does not show any evidence that he was under the immediate influence of passion. The mere fact that Mitchell acted in response to Williams's provocation is not sufficient to warrant a charge on sudden passion. *See Trevino,* 100 S.W.3d at 241. Mitchell's issue is overruled.

### CONCLUSION

Having overruled Mitchell's issues, we affirm the judgment of the trial court.