# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00127-CR

**Delton Conroe Heugatter Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
### NO. CR21,246, HONORABLE EDWARD P. MAGRE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Delton Heugatter, Jr. of two counts of aggravated sexual assault. *See* Tex. Penal Code Ann. §§ 22.021, 22.04(c)(2) (West Supp. 2006) (sexual assault of person over sixty-five years old is aggravated). After Heugatter pleaded true to two enhancement paragraphs, the district court sentenced him to two concurrent terms of life in prison. On appeal, Heugatter complains that the district court abused its discretion by permitting the State to take a deposition of the complaining witness before the effective date of the statute authorizing that procedure. He contends that the district court erred by admitting the deposition testimony into evidence at trial because it was not taken in conformity with the statute authorizing such depositions. He also asserts that the court erred by admitting the deposition testimony in lieu of requiring the complaining witness to testify live in court. We affirm.

The testimony Heugatter challenges is the videotaped deposition of the victim, K.G., a ninety-one-year-old woman. In the videotaped testimony, K.G. testified that a man kicked open her back door as she approached it, which spun her around and knocked her down. She said the man told her not to look at him and demanded money. She gave him about forty dollars. She testified that he told her to go to the bed and remove her pants and underwear. She complied, but tried to dissuade him. She testified that the man slapped her several times and tried to penetrate her anus with his penis. She did not recall him penetrating her vagina. As he prepared to leave, she managed to see that he was wearing boots. She testified that she thought he was white from the way he talked and thought he might be somewhat tall because of the way he stood behind her during the assault and the length of his stride when he walked. After he left, she telephoned for help. She was examined at the hospital. On cross-examination, K.G. admitted that she had not seen her attacker and so could not be sure that it was Heugatter. She said she believed it was Heugatter because he had been spending time in her outbuilding without her permission. (Heugatter had admitted making many toll calls from her telephone in an outbuilding near her house in the days before the attack.)

Other evidence linking Heugatter to the incident—including his written, sworn statements to police and security camera footage showing a man identified as him outside K.G.'s house—was admitted at trial. This other evidence does not pertain to the issues he raises on appeal, but it renders any of the asserted errors in the admission of the videotaped testimony harmless.

The statutes at the core of this dispute relate to the taking and use—in this case, by the State—of depositions during a criminal trial. *See* Tex. Code Crim. Proc. Ann. arts. 39.01-.02 (West Supp. 2006), art. 39.03 (West 2005). Depositions can be taken in criminal proceedings after

2

a showing of "good reason." *Id*. art. 39.02. The statute requires that the deposition be taken in front of either a district judge, a county judge, a notary public, a district clerk, or a county clerk. *Id.* art. 39.03. Witness depositions may be used at trial if oath is made by the party using the deposition that "by reason of age or bodily infirmity, that witness cannot attend" the trial. *Id*. art. 39.01. The current versions of articles 39.01 and 39.02 were effective on September 1, 2005 and apply "to a criminal case in which the indictment or information is presented to the court on or after September 1, 2005." *Id*. arts. 39.01-.02 historical notes [Act of May 25, 2005, 79th Leg., R.S., ch. 1021, § 1, 2005 Tex. Gen. Laws 3475, 3475-76].

Heugatter does not dispute that K.G.'s condition satisfied the statute,[1] but disputes whether the statute is applicable to this case, whether the statute was followed, and whether use of the videotape violated his federal and state constitutional right to confront witnesses. To the extent such errors do not implicate constitutional rights, we review for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 378-79 (Tex. Crim. App. 1990). The errors asserted in this case must be harmful in order to warrant reversal. *See Lilly v. Virginia*, 527 U.S. 116, 139-40 (1999) (Confrontation Clause violations are subject to harmless error analysis); *see also* Tex. R. App. P. 44.2. The standard for reviewing harm from errors in criminal cases is bifurcated:

> (a) *Constitutional Error*. If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines

---

[1] At the time of the deposition, December 27, 2005, K.G. had undergone chemotherapy and radiation and was on medication for breast cancer. At the time of trial, she was suffering the effects of recently administered chemotherapy and other medications. She had flu-like symptoms, a temperature of 101 degrees, and a lack of clarity of recollection.

3

beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

(b) *Other Errors*. Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

Tex. R. App. P. 44.2.

If there is a reasonable likelihood that an error of constitutional magnitude materially affected the jury's deliberations, then the error was not harmless beyond a reasonable doubt. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). The focus is not on the propriety of the outcome of the trial, but the probable impact of the error on the jury in light of the existence of other evidence. *Id.*; *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989). We examine the source of the error, the nature of the error, and the extent to which it was emphasized by the State. *See Harris*, 790 S.W.2d at 587. We also determine whether declaring the error harmless would encourage the State to repeat it with impunity. *Id*.

Errors in the admission of evidence warrant reversal only if they affected a substantial right. *See* Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but slight effect on its verdict. *See Johnson v. State*, 967 S.W.2d 410, 417. "It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not

4

challenged." *Crocker v. State*, 573 S.W.2d 190, 201 (Tex. Crim. App. 1978); *see also Mitchell v. State*, 191 S.W.3d 219, 224 (Tex. App.—San Antonio 2005, pet. ref'd).

Heugatter complains that the trial court abused its discretion by allowing the State to take K.G.'s deposition. He asserts that the statute authorizing such depositions was not applicable because the indictment against him was presented to the court before the effective date of the statute. Heugatter was indicted on March 17, 2005. He was reindicted on September 29, 2005, under an indictment realleging the previous sexual assault charges and adding a burglary charge. Heugatter contends, however, that the reindictment was mere subterfuge intended to circumvent the effective date of the amendments to article 39.02. He notes that the new allegations do not contain any facts previously unknown to the State.

We find no basis for reversal in the trial court's application of the 2005 amendments to articles 39.01-.02. First, we find no objection by Heugatter on the basis of the interaction of the effective date of the statute and the indictment.[2] His complaint regarding the applicability of the statute is, therefore, waived. *See* Tex. R. App. P. 33.1(a). Further, the 2005 amendments apply to a criminal case in which the indictment is presented to the court on or after September 1, 2005. Tex. Code Crim. Proc. Ann. arts. 39.01-.02 historical notes. "An indictment is considered as 'presented' when it has been duly acted upon by the grand jury and received by the court." *Id*. art. 12.06. The filing of a new indictment constitutes the institution of a new case against the defendant. *See Trevino v. State*, 900 S.W.2d 815, 817 (Tex. App.—Corpus Christi 1995, no pet.) (citing

---

[2] The only objection we find in the trial court record is that not having the witness testify live in court violates his Sixth Amendment right to confrontation.

5

*Gonzales v. State*, 320 S.W.2d 679, 680 (Tex. Crim. App. 1959)). The reindictment was presented on September 29, 2005, after the effective date of the amendments. Consequently, the amendments apply to this cause.

Heugatter contends that the trial court erred in admitting the deposition into evidence because the State did not comply with the statutory requirements that the deposition be taken before either a district judge, a county judge, a notary public, a district clerk, or a county clerk. *See* Tex. Code Crim. Proc. Ann. art. 39.03. The court ordered that the deposition "be taken before a certified court reporter or notary public." Heugatter contends that, because the deposition was taken before a court reporter—not any of the statutorily listed individuals—it is barred as illegally obtained evidence. *See id*. art. 38.23. Heugatter waived this complaint by failing to present it to the trial court. *See* Tex. R. App. P. 33.1(a). Further, any error is harmless because the purposes of having the required observer were satisfied by the actions of the court reporter who transcribed the deposition. *See* Tex. R. App. P. 44.2(b). A court reporter is authorized to administer oaths to witnesses,[3] and the record reflects that the court reporter in this deposition administered an oath. There is no dispute that K.G. was the person deposed. The jury and judge at trial viewed the videotape and could assess the oath, her identity, and her testimony. Thus, it appears that the safeguarding purpose of the designated observer was satisfied without detriment to Heugatter.

Finally, Heugatter contends that the court's admission of the deposition violated his right to confront witnesses against him. The federal and state constitutions guarantee the right of an accused in a criminal prosecution to confront the witnesses against him. U.S. Const. amends. VI,

---

[3] *See* Tex. Gov't Code Ann. §§ 52.001, 52.025(b) (West 2005).

XIV; *see also* Tex. Const. art. I, § 10.  The right of confrontation secures for the defendant the opportunity to cross-examine the accuser. *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974).  Heugatter complains that he was "never allowed to confront his accuser in court, in front of the jury."  Neither the federal nor the state constitutions guarantee a face-to-face confrontation between the defendant and his accuser in front of the jury in all cases.  *Gonzales v. State*, 818 S.W.2d 756, 761-65 (Tex. Crim. App. 1991) (upholding application of statute permitting child witness of murder to testify from outside the courtroom when shown in courtroom via closed-circuit television).  The main purpose of the right of confrontation is to permit cross-examination of the witness.  *Id*. at 763 (quoting *Garcia v. State*, 210 S.W.2d 574, 579 (Tex. Crim. App. 1948)).  Heugatter's attorney was present and cross-examined K.G. at the deposition on the videotape that was played for the jury.  Heugatter was present at the deposition, albeit outside the room in which K.G. gave testimony.  Heugatter does not mention any issues that came to light after the deposition, including at the trial, about which he was unable to confront K.G.  On these facts, we see no violation of Heugatter's right to confront K.G.

Even if Heugatter preserved and showed error in the issues described above, any error was rendered harmless by the admission of similar evidence and other evidence that overwhelmingly demonstrated his guilt.  The essential elements of K.G.'s videotaped testimony were admitted through other testimony not objected to at trial or challenged on appeal.  Jeff Hinojosa, the first police officer to respond to the distress call, testified that K.G. told him she had been sexually assaulted.  Debbie Kleypas, the nurse who examined K.G., testified that K.G. "stated to me that 'He raped me,' and that 'He tried to go in my rectum with his penis, and he went in my vagina with his

7

penis.'" K.G.'s daughter testified that her mother received her embalmer's license in 1944, supporting the finding that she was over 65 years old at the time of the attack. When taken together, this evidence renders the essential elements of K.G.'s testimony redundant.

Much other, more incriminating evidence was admitted. Foremost is Heugatter's statement to police.[4] In it, Heugatter stated in part, that he "decided to go to [K.G.]'s house and try to gets (sic) some money so I could get some beer and crack. . . . I pushed my way in the house. . . . I reached down and took her wallet it had about $42.00. . . . I stuck my fingers in her butt and vagina." He separately admitted that he stayed in K.G.'s outbuilding and used her telephone there, thus, confirming a statement on her videotaped deposition. He admitted familiarity with her home because he had helped his stepfather, Delton Seaton, mow her lawn a few times. Seaton testified that he saw Heugatter in Cameron at about 4:30 or 5:00 p.m. the day K.G. was attacked. Officer Hinojosa responded to K.G.'s distress call at 7:51 p.m. Heugatter was stopped by Cameron Police Officer Mark Nowell at approximately 11:00 p.m. A security videotape from an automatic teller machine across the street from K.G.'s home showed a man walking around K.G.'s house at around the time of the assault. Although the man's features were not discernable, Milam County Deputy Greg Kouba got a tip that the man on the tape walked like a man named "Junior." Witnesses testified that Heugatter is called Junior. One of those witnesses, bartender and postmaster Brenda Halpain, identified Heugatter as the man on the videotape based on his peculiar gait in which he does not bend his legs much. Texas Ranger Matthew Lindemann interviewed K.G. while she was being

---

[4] Although Heugatter challenged the admissibility of this statement at trial, he does not seek review of the trial court's ruling regarding its admissibility.

treated at the hospital a few hours after the assault. He testified that she described her attacker as a white man with shoulder length dark hair. This testimony provides a more elaborate description of Heugatter than that given by K.G. in her deposition. In short, there was conclusive evidence identifying Heugatter as the attacker other than the deposition testimony of K.G.

The evidence overwhelmingly demonstrates Heugatter's guilt. Even if the court abused its discretion and violated Heugatter's confrontation right by admitting K.G.'s testimony, her testimony did not materially affect the jury's deliberations.[5] Heugatter's statement admitting guilt is dispositive of any defense he might undertake in the absence of K.G.'s deposition testimony. The corroborating evidence from other witnesses diminishes the marginal effect of K.G.'s testimony on the jury still more. Having assessed these and the remaining applicable factors, we find no harm from any of the asserted constitutional or non-constitutional errors.

Affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: August 30, 2007

Do Not Publish

_____

[5] While it is conceivable that an elderly victim's testimony might affect jurors' deliberations on punishment even if it did not affect their assessment of guilt/innocence, we need not consider that issue because the court assessed sentence in this case.