Affirmed and Opinion filed May 27, 2008








Affirmed
and Opinion filed May 27, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00014-CR

____________

 

JUAN MANUEL CAMPOS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 23rd
District Court

Brazoria County, Texas

Trial Court Cause No. 42,918

 



 

O P I N I O N

Appellant Juan Manuel Campos appeals his conviction for
aggravated assault.  In three issues, appellant complains the trial court erred
in making certain evidentiary rulings and in allowing the jury to make an
affirmative finding that appellant used his feet as a deadly weapon.  We
affirm.

I.  Background








Appellant and Hai Son Nguyen were inmates at the Clemens
Unit of the Texas Department of Criminal Justice in Brazoria County, Texas.  On
May 22, 2000, a fight broke out after some inmates attacked Nguyen.  Although
the inmates= accounts of what happened differed at trial, four
inmates testified that they saw appellant jumping on Nguyen=s head after
Nguyen had fallen to the floor.  Nguyen suffered brain injuries as well as
multiple stab wounds and died at a Galveston hospital several hours later. 
According to the medical examiner=s trial testimony,
Nguyen sustained fatal stab wounds, as well as a severe brain injury that may
also have caused his death.

In his first two issues, appellant maintains the trial
court violated his confrontation rights by allowing the medical examiner to
testify regarding an autopsy report that he did not author and a DNA chemist to
testify regarding a DNA analysis report that she did not author.  In his third
issue, appellant contends that because the indictment did not allege appellant
used his feet as a deadly weapon, he was not given notice that the State would
seek an affirmative finding to that effect, and thus the trial court erred in
submitting that issue to the jury.

II.  Analysis

A. 
Confrontation Clause

In his first issue, appellant complains that his inability
to cross examine the medical examiner who prepared the autopsy report violated
his Sixth Amendment right to confrontation.  In his second issue, appellant
claims his inability to cross examine the DNA chemist who performed the DNA
analysis violated his confrontation rights.  The State replies that appellant
waived error with respect to these issues, and that even if appellant preserved
error, the trial court did not err in admitting the testimony. 

1.  Preservation of Error








To preserve a complaint for appellate review, the
complaining party must state the grounds for the desired ruling to the trial
court Awith sufficient
specificity to make the trial court aware of the complaint, unless the specific
grounds were apparent from the context.@  Tex. R. App.  P. 33.1(a)(1)(A); Reyna v. State, 168 S.W.3d 173,
177 (Tex. Crim. App. 2005).  The trial court must have ruled on the request,
objection, or motion, either expressly or implicitly, or the complaining party
must have objected to the trial court=s refusal to rule.
Tex. R. App. P. 33.1(a)(2). 

The State argues that appellant waived error with respect
to admission of underlying facts contained in the autopsy report and DNA
analysis report because he failed either to raise an objection each time the
inadmissible evidence was offered or obtain a running objection.  See Valle
v. State, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003).  The State offered
testimony by medical examiner Dr. Stephen Pustilnic regarding Nguyen=s injuries.  Dr.
Pustilnic based his testimony on the autopsy report prepared by his
predecessor.  The report itself was never admitted into evidence.  Before Dr.
Pustilnic began testifying to the injuries in the autopsy report, appellant
objected that A[t]his witness has no personal knowledge.@  The trial court
overruled this objection.  After Dr. Pustilnic testified to the stab wounds
documented in the autopsy report, appellant again objected: AYour Honor, at
this time I=m going to object to any further line of this
testimony as violated from our confrontation rights of the person who actually
performed the procedures [sic].@  The court overruled appellant=s second
objection.

The
State later called Christy Smejkal, supervisor of the Texas Department of
Safety DNA Crime Lab, to testify about facts contained in a DNA analysis report
prepared by Kristi Wimsett, a subordinate who was out on maternity leave.  At
the beginning of Smejkal=s testimony, appellant requested permission to take the
witness on voir dire.  After determining that Smejkal did not author the DNA
report, appellant objected: AYour Honor, I=d object to this witness testifying about these results
because she is not the one that performed the examination; and two, I would
object because it violates my client=s confrontation rights to allowCunder the Constitutions to allow this
evidence to be entered in this fashion.@  The trial court overruled appellant=s objection. 








Although the law in Texas generally requires a party to continue to object
each time inadmissible evidence is offered, a continuing or running objection
may also suffice to preserve error.  Ethington v. State, 819 S.W.2d 854,
858 (Tex. Crim. App. 1991).  A continuing objection preserves error when it is
timely, provides the basis for the ruling, and states the ruling desired from
the court.  Id. at 859.  Appellant was clearly objecting on confrontation
grounds to the entire testimony by Dr. Pustilnic and Smejkal on facts contained in reports they
did not author. 
Further, the objections were timely and stated the desired ruling from the trial
court.  We find appellant=s objections to Dr. Pustilnic=s and Smejkal=s testimony
sufficient to preserve error.  See Ford v. State, 919 S.W.2d 107, 113B14 (Tex. Crim. App. 1996) (holding
that even though appellant failed to object each time objectionable evidence
was offered, appellant preserved error by requesting that his objection extend
to any witness who testified regarding the matter).

2.  No Confrontation Clause Violation

The Atestimonial statements@ of witnesses
absent from trial are admissible over a Sixth Amendment Confrontation Clause
objection only when the declarant is unavailable and the defendant has had a
prior opportunity to cross examine the declarant.  See Crawford v.
Washington, 541 U.S. 36, 68 (2004).  Post‑Crawford, the
threshold question in any Confrontation Clause analysis is whether the
statements at issue are testimonial or nontestimonial in nature.  Spencer v.
State, 162 S.W.3d 877, 879 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d).  We review a constitutional legal
ruling, such as whether a statement is testimonial, de novo.  Wall v. State,
184 S.W.3d 730, 742 (Tex. Crim. App. 2006).  By contrast, we review a trial
court=s admission or
exclusion of evidence for an abuse of discretion.  Torres v. State, 71
S.W.3d 758, 760 (Tex. Crim. App. 2002).  A trial court does not abuse its
discretion, and we will not reverse a trial court=s ruling, unless
the ruling falls outside the zone of reasonable disagreement.  Id.  A
trial court abuses its discretion when it acts without reference to any guiding
rules and principles or acts arbitrarily or unreasonably.  Montgomery v.
State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).








The United States Supreme Court did not explicitly define
the term Atestimonial@ in Crawford. 
However, the Court did state that A[w]hatever else
the term covers, it applies at a minimum to prior testimony at a preliminary
hearing, before a grand jury, or at a former trial; and to police
interrogations.@  Crawford, 541 U.S. at 68.  In Davis
v. Washington, the Court elaborated on the holding of Crawford and
held that in the context of police interrogations, statements are
nontestimonial when made under circumstances objectively indicating that the
primary purpose of the interrogation is to enable police assistance to meet an
ongoing emergency.  547 U.S. 813, 822 (2006).  Statements are testimonial when
the circumstances objectively indicate that there is no such ongoing emergency
and that the primary purpose of the interrogation is to establish or prove past
events potentially relevant to later criminal prosecution.  Id. 








In determining whether records are testimonial under Crawford,
Texas courts have distinguished various types of records containing subjective
observations pertinent to the accused=s guilt or
innocence from those that merely relate objective or historical information.  See
Russeau v. State, 171 S.W.3d 871, 880B81 (Tex. Crim.
App. 2005); Ford v. State, 179 S.W.3d 203, 209 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d), cert. denied, 127 S. Ct.
281 (2006).  In Russeau, the Court of Criminal Appeals held that because
the inmate discipline and incident reports contained written observations made
by correctional officers, the reports were testimonial within the meaning of Crawford. 
See Russeau, 171 S.W.3d at 880B81.  In Ford v.
State, we distinguished Russeau and held that because the
inmate disciplinary records were sterile recitations of the appellant=s offenses and the
punishments he had received for those offenses, they were not testimonial.  See
Ford, 179 S.W.3d at 209.[1] 
We further clarified our holding in Ford in Grant v. State,
explaining that whether a report was testimonial did not depend solely on the
inclusion or omission of detailed and graphic personal observations, but rather
on the extent to which the records are either sterile recitations of fact or a
subjective narration of events related to the appellant=s guilt or
innocence.  See Grant v. State, 218 S.W.3d 225, 230B31 (Tex. App.CHouston [14th
Dist.] 2007, pet. ref=d).

In his first issue, appellant argues that the admission of
Dr. Pustilnic=s testimony to facts in the autopsy report violated
his confrontation rights because the report was testimonial and appellant had
no opportunity to cross examine the report=s author.  At
least three Texas courts have determined that autopsy reports are
nontestimonial in nature.  See Terrazas v. State, No. 03‑05‑00344‑CR,
2006 WL 2080381, at *5 (Tex. App.CAustin July 28,
2006, pet. ref=d) (mem. op., not designated for publication) (holding
introduction of autopsy report did not violate Confrontation Clause, in part
because report contained factual statements setting forth matters observed
pursuant to duty imposed by law); Mitchell v. State, 191 S.W.3d 219, 221B22 (Tex. App.CSan Antonio 2005,
pet. ref=d) (holding autopsy report was
nontestimonial because report did not fall within categories of testimonial
evidence described in Crawford); Denoso v. State, 156 S.W.3d 166,
182 (Tex. App.CCorpus Christi 2005, pet. ref=d) (same).  Although this court has not
addressed this issue directly, in Grant we acknowledged that if the
testimonial nature of records turned on the presence of Adetailed and
graphic observations,@ then Aautopsy reports
would be considered testimonial, yet this is not the case.@  See Grant,
218 S.W.3d at 231 (citing Mitchell, 191
S.W.3d at 221B22 and Denoso, 156 S.W.3d at 182).








Based on the rationale in these cases, we conclude the
autopsy report at issue contains a sterile recitation of facts and is
nontestimonial within the meaning of Crawford and Davis.[2] 
See Grant, 218 S.W.3d at 231B32; Ford,
179 S.W.3d at 209.  The report provides objective facts regarding Nguyen=s injuries and the
cause of his death.  The information is routine, descriptive, and
nonanalytical; the report does not relate subjective narratives pertaining to
appellant=s guilt or innocence.  See Grant, 218 S.W.3d at
231.  Because the autopsy report is nontestimonial and because appellant
had an opportunity to cross examine Dr. Pustilnic, we conclude that admitting
Dr. Pustilnic=s testimony to the information contained in the report
did not violate appellant=s right to confrontation.  See Pierce
v. State, 234 S.W.3d 265, 269 (Tex. App.CWaco 2007, pet.
ref=d) (holding
inability to confront and cross examine autopsy report author did not violate
right to confrontation because appellant had opportunity to confront
pathologist who testified regarding report); see also Grant, 218 S.W.3d
at 231; Mitchell, 191 S.W.3d at 221B22; Denoso, 156 S.W.3d at 182.  We overrule
appellant=s first issue.








In his second issue, appellant argues that the DNA report
that was the basis of Smejkal=s testimony was a testimonial statement
because it was made under circumstances that would lead an objective witness to
reasonably believe the statement would be used at a later trial.  At trial,
Smejkal testified that her subordinate took blood samples from appellant=s and Nguyen=s jumpsuits and
created DNA profiles from each sample.  Using transparency copies of the
profiles produced by her predecessor, Smejkal compared the DNA profiles for the
jury.  These copies were admitted into evidence.  Smejkal testified she agreed
with the results the subordinate reached in conducting the analysis and that ANguyen [could not]
be excluded as a contributor@ to the blood stain found on the leg of
appellant=s jumpsuit. 

Appellant=s second issueCwhether a DNA
report is testimonial under CrawfordCpresents a matter
of first impression for this court; appellant does not refer us to any Texas
cases addressing this issue.  To our knowledge, only one Texas court has
addressed a Confrontation Clause objection to the admission of a DNA report.[3] 
See Johnson v. State, No. 05‑05‑00848‑CR, 2006 WL
1738288, at *3 (Tex. App.CDallas June 27, 2006, pet. ref=d) (not designated
for publication).  In Johnson, the Dallas Court of Appeals faced a
situation almost identical to the instant case.  See id.  The Johnson
court concluded that admission of a forensic biology report containing DNA
profiles, through testimony by a medical examiner who was not the preparer of
the report, did not violate the Confrontation Clause.  Id. at *3B4.  The court
reasoned that because the report contained information collected during the
investigation of a crime scene, set forth matters observed pursuant to a duty
imposed by law, and did not accuse the appellant of any wrongdoing, the report
was not testimonial within the meaning of Crawford.  Id. at *3.








Following Davis, other jurisdictions dealing
specifically with the admission of DNA reports where the report=s author does not
testify have concluded that the reports are not testimonial within the meaning
of Crawford and Davis.[4] 
We find the rationale applied in two of these cases, People v. Geier and
People v. Rawlins, instructive.  See People v. Geier, 161 P.3d
104, 140 (Cal. 2007); People v. Rawlins, ___ N.E.2d ___, 2008 WL 423397,
at *11B12 (N.Y. Feb. 19,
2008).  Both Geier and Rawlins interpreted Davis as
requiring courts to focus on the circumstances under which the allegedly
testimonial statement was generated.  See Geier, 161 P.3d at 140 (ADavis . . . requires us
to consider the circumstances under which the statement was made.@); Rawlins,
2008 WL 423397, at *8 (AThe force of Davis is that context
matters . . . .@).  In Geier, the defendant
objected on confrontation grounds to admission of a DNA report, through
testimony by the prosecution=s DNA expert, because the technician who
actually conducted the analysis did not testify.  Geier, 161 P.3d at
133.  The Geier court observed that (1) the report was generated
pursuant to a standardized, scientific protocol, (2) the analysis was performed
as part of the technician=s job and not in order to incriminate the
defendant, (3) the report recounted the procedures used to analyze the DNA
samples, (4) the DNA analysis was not accusatory because the results had the
power to exonerate as well as convict, and (5) the accusatory opinion that the
defendant=s DNA matched a sample taken from the victim was
reached and conveyed by the testifying DNA expert and not the non-testifying
technician who authored the report.  Geier, 161 P.3d at 140.  Rawlins
also concerned admission of a DNA report through testimony by a witness other
than the report=s author.  Rawlins, 2008 WL 423397,
at *3.  The Rawlins court applied a similar analysis in reaching the
same conclusion as in Geier, but further reasoned that because A[n]either the
prosecution nor law enforcement could have influenced the outcome [of the DNA
report],@ factors such as
whether the laboratory was performing work for law enforcement or whether the
technicians knew the results could later be used at trial were
inconsequential.  Id. at *11B12.  Thus both Geier
and Rawlins concluded that given the circumstances under which the
DNA reports were generated, they did not fall within the scope of testimonial
statements described in Crawford and Davis.  Geier, 161
P.3d at 140; Rawlins, 2008 WL 423397, at *11.

We agree with the approach of Geier and Rawlins
and the analysis formulated by the Dallas Court of Appeals in Johnson. 
Smejkal testified in detail as to the standard operating procedures the
laboratory follows when performing DNA testing.  The DNA report consisted of
raw dataCDNA profiles
obtained from blood found on appellant=s and Nguyen=s jumpsuits.  By
following established protocols, the DNA profiles were generated as part of a
routine process meant to ensure accurate analysis.  Because the report provided
factual evidence which had the potential to support appellant=s conviction or
exonerate him, it was not accusatory.  The DNA report was thus neutral: the DNA
profiles shed no light on appellant=s guilt absent an
expert opinion as to what those profiles revealed.  It was left to Smejkal to
draw from this evidence the inference that the victim=s DNA matched DNA
found on appellant=s jumpsuit.  Smejkal testified that she
agreed with the results the technician reached in performing her analysis and
that Nguyen could not be excluded as a contributor to the blood stain found on
appellant=s jumpsuit.[5] 
Appellant had ample opportunity to cross examine Smejkal regarding the
inferences and conclusions she drew from the DNA profiles.  We conclude the
report did not testify or bear witness against appellant within the meaning of Crawford
and Davis.  See Davis, 547 U.S. at 823B24.  Accordingly,
admission of the report and Smejkal=s testimony did
not violate appellant=s confrontation rights.  See Geier,
161 P.3d at 140; Rawlins, 2008 WL 423397, at *11; Johnson, 2006
WL 1738288, at *3.








Because we conclude the DNA report was nontestimonial and
because appellant had an opportunity to cross examine Smejkal regarding her
opinions about the report, we find no Confrontation Clause violation. 
Accordingly, we hold the trial court did not err in admitting Smejkal=s testimony and we
overrule appellant=s second issue.

B. 
Deadly Weapon Finding

In his third issue, appellant claims that because the
indictment did not allege that he used his feet as a deadly weapon, appellant
received no notice that the State would seek an affirmative finding to that
effect and consequently, the trial court erred in submitting the issue to the
jury.  This argument ignores Texas case law to the contrary.  A defendant is
entitled to written notice that the State will seek an affirmative finding that
a deadly weapon was used during commission of the charged crime, but such
notice need not be contained in the indictment under which the defendant is
ultimately tried.  Ex parte Minott, 972 S.W.2d 760, 761 (Tex. Crim. App.
1998).  A defendant is simply entitled to written notice in some form that the
use of a deadly weapon will be a fact issue at trial.  Id.  The State
provided proper written notice to appellant in its Notice of Deadly Weapon, filed
two weeks prior to trial, that it intended to seek an affirmative finding that
appellant used his feet as a deadly weapon.  We overrule appellant=s third issue.

We affirm the trial court=s judgment.

 

 

/s/      Leslie B. Yates

Justice

 

Judgment rendered
and Opinion filed May 27, 2008.

Panel consists of
Justices Yates, Guzman, and Price. *

Publish C Tex. R. App. P. 47.2(b).

______________________________________

*   Senior Justice
Frank C. Price sitting by assignment.









[1]  Texas courts have employed the Asterile recitation@
analysis in Ford to determine whether other types of records are
testimonial.  See Azeez v. State, 203 S.W.3d 456, 466 (Tex. App.CHouston [14th Dist.] 2006) (holding that challenged
records reflected same sterility as those in Ford), rev=d on other grounds, No. PD‑010‑07, ___ S.W.3d ___, 2008 WL 582353 (Tex. Crim.
App. Mar. 5, 2008); Guel‑Rivas v. State, No. 03‑06‑00762‑CR,
2007 WL 4208341, at *3 (Tex. App.CAustin,
Nov. 30, 2007, pet. struck) (mem. op., not designated for publication) (finding
statements in sexual assault report that complainant did not have any physical
injuries were a Asterile recitation@ of
facts, and as such, nontestimonial and not subject to the Confrontation
Clause); see also In re J.R.L.G., No. 11‑05‑00002‑CV,
2006 WL 1098944, at *2 (Tex. App.CEastland
Apr. 27, 2006, no pet.) (mem. op., not designated for publication) (applying
reasoning in Ford to determine that positive laboratory results from
appellant=s urinalysis screening were nontestimonial).

 





[2]  Other jurisdictions addressing Confrontation Clause objections
to the admission of autopsy reports where the report=s author does not testify have similarly concluded the
reports are nontestimonial, albeit through a variety of rationales.  See United States v. Feliz, 467 F.3d 227, 237 (2d Cir. 2006)
(holding that because they were admissible as both business and public records,
autopsy reports were nontestimonial and not subject to Confrontation Clause), cert.
denied, 127 S. Ct. 1323 (2007); People v. Moore, 880 N.E.2d 229,
235, 237 (Ill. App. Ct. 2007) (concluding that since autopsy reports should be
treated as business records, admission of autopsy report and testimony by
medical examiner who did not author report did not implicate Crawford); State
v. Beaner, 974 So. 2d 667, 685B86 (La. Ct. App. 2007) (holding autopsy report was
nontestimonial in nature and therefore admission of report without maker=s testimony did not trigger Crawford
mandate for cross examination); State v. Craig, 853 N.E.2d 621, 639
(Ohio 2006) (agreeing with majority view that because autopsy reports are
nontestimonial business records, their admission does not violate defendant=s confrontation rights), cert.
denied, 127 S. Ct. 1374 (2007); State v. Cutro, 618 S.E.2d 890, 896
(S.C. 2005) (concluding autopsy reports are similar to public records, not
testimonial, and may be admitted without violating confrontation rights).  But
see Smith v. State, 898 So. 2d 907, 916B17 (Ala. Crim. App. 2004)
(concluding admission of autopsy report without author=s testimony was error because it
enabled prosecution to prove an essential element of the crime without
providing defendant an opportunity to cross examine report=s author); State v. Davidson,
242 S.W.3d 409, 417 (Mo. Ct. App. 2007) (holding that because autopsy report
was prepared for litigation, it was testimonial and admission without author=s testimony violated defendant=s confrontation rights).





[3]  In Acevedo v. State, the San Antonio Court of Appeals held that
because a fingerprint report was prepared for the purpose of establishing or
proving past events potentially relevant to a later criminal prosecution, the
report was testimonial.  Acevedo v. State, ___ S.W.3d ___, 2008 WL
228004, at *8 (Tex. App.CSan Antonio Jan. 30, 2008, pet.
filed).  However, the opinion contains
very little analysis; after quoting the Aprimary
purpose@ language from Davis, the court concluded the
fingerprint report was testimonial because Ait
potentially provided factual evidence to support [Acevedo=s] conviction.@  Id.
at *7B8. We disagree that whether a report
potentially provides factual evidence to support a conviction is the sole
inquiry.  If so, very few, if any, scientific reports would be
non-testimonial.  As discussed further below, we believe the better reasoned
approach, and one that is consistent with the directives of Davis, is to
look at the circumstances under which the statement, or the report, was made.  





[4]  See also United States v. Washington, 498
F.3d 225, 232 (4th Cir. 2007) (holding drug test results obtained from
blood analysis were not testimonial under Crawford and Davis because
Astatements@ in
report did not establish or prove past events); State v. O=Maley, 932 A.2d 1, 14 (N.H. 2007)
(concluding blood sample collection form and results of blood tests were
neutral and not testimonial under Davis); State v.
Crager, 879 N.E.2d
745, 757 (Ohio 2007) (holding DNA reports contained raw data, did not Abear witness@ against defendant, and as such
were nontestimonial); cf. State v.
Lewis, 235 S.W.3d 136, 151 (concluding expert=s testimony to results in DNA report he did not author was
admissible because expert did not communicate any out of court statements made
by author).  But see Thomas v. United
States, 914 A.2d 1, 12 (D.C. 2006) (concluding report analyzing substance
as cocaine constituted Acore@ testimonial
statement under Davis), cert. denied, 128 S.Ct. 241 (2007); State v. March, 216 S.W.3d 663, 666B67 (Mo.) (concluding laboratory
report prepared for purpose of prosecuting defendant was testimonial under Aprimary purpose@ test of Davis), cert.
dismissed, 128 S. Ct. 1441 (2007); State v. Kent, 918 A.2d
626, 640 (N.J. Super. Ct. App. Div. 2007) (applying Crawford and Davis
to conclude defendant was constitutionally entitled to cross examine
declarants who prepared blood certificate and laboratory reports).





[5]  In making this statement regarding Nguyen, Smejkal
read from a document prepared by Wimsett, the subordinate technician who
actually performed the DNA analysis.  Apparently, Wimsett documented her
conclusion that Nguyen could not be excluded as a source of the blood on
appellant=s jumpsuit.  However, this written portion of the
report was not admitted into evidence, and although Smejkal read from Wimsett=s report in testifying, Smejkal also stated
unequivocally her own conclusion that Nguyen was a likely source of the blood
on appellant=s jumpsuit.