**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*
_____

**NO. 09-15-00138-CR**
_____

**TROVOY KEITH JONES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 14-19434**

**MEMORANDUM OPINION**

A Jefferson County jury found the appellant, Trovoy Keith Jones, guilty of committing aggravated assault with a deadly weapon, a first degree felony. *See* Tex. Penal Code Ann. §22.02(a)(2), (b)(1) (West 2011). The jury assessed punishment at seventy-five years in prison. The trial court sentenced Jones in accordance with the jury's verdict.

1

In three issues, Jones challenges (1) the sufficiency of the evidence to support his conviction; (2) the trial court's failure to instruct the jury to disregard inadmissible testimony of the victim; and (3) the trial court's failure to grant his motion for mistrial. We conclude the evidence is sufficient to support Jones' conviction, and we further conclude that the trial court did not abuse its discretion in refusing the request for a jury instruction to disregard testimony of a witness and subsequently, denying Jones' motion for mistrial. We affirm the trial court's judgment.

**Factual Background**

According to the evidence presented at trial, on February 7, 2013, police officers were dispatched to an apartment following a 911 call reporting that a victim had been shot in the face. When officers first arrived at the scene, they found Jones sitting on the floor in the bedroom holding a woman, later identified as Whitney Savoy. Police officers noticed that Savoy had a gunshot wound to her face.

Jones informed the officers that he was asleep on the bed when Savoy came running in through the back door of the apartment and collapsed in the bedroom, stating that she had been shot. Savoy also told the officers that she had been returning from another apartment unit, when an unknown assailant came up behind

2

her and shot her. She stated that she was behind the apartment units and ran in through the back door of her apartment and collapsed in the bedroom.

Officers found the back door of the apartment open. Despite an extensive search of the area, they were unable to locate a shell casing, blood or other evidence from where the crime had reportedly occurred. Savoy was taken by ambulance to the emergency room where a trauma surgeon examined her and eventually performed surgery to remove the bullet. The bullet had entered Savoy's body just below her left jaw bone and passed through her neck where it hit the C-6 vertebra, then went through the spinal cord area and became lodged in the soft tissue at the back of her neck. The trauma surgeon testified that as a result of the injuries she received, Savoy would suffer permanent paralysis, having no movement of her legs. The trauma surgeon described her injuries as serious and permanent.

There is evidence that police detectives doubted Savoy's initial explanation of how she had been shot. Savoy maintained this version of the events from February, 2013, until sometime in August, 2013, when she allegedly told a friend that Jones had actually been the person who shot her. In March of 2014, Savoy first informed one of the detectives investigating her case that Jones had shot her.

Savoy testified she and Jones had been dating for almost one year when the incident occurred. On the day before the incident, she had received a sizeable income tax refund. When Jones found out about the refund check being deposited in her bank account, he asked Savoy for some of the money. Savoy initially declined his request, telling Jones that she had obligations she had to take care of with the funds. The following day, Savoy was with Jones most of the day and into the early part of the evening. They returned to her mother's apartment where she was staying, with her two children. She sat the children in the living room, turned on the television, then she and Jones went to the bedroom. According to Savoy, immediately after having sexual relations, Jones reached to the floor, picked up a .22 pistol and pointed it directly into Savoy's face. Savoy turned her head away, and as she was turning her head back towards Jones, she saw the pistol within inches of her face. Savoy then heard a loud ringing in her ears and felt herself slowly sinking to the floor. Before falling unconscious, she saw Jones pick something up from the floor and run out of the room and then heard the back door slam. When she regained consciousness, she lay on the floor, unable to move and aware that she was bleeding. Jones came back into the room and, after seeing that she was conscious, made the statement that he was going back to the penitentiary.

Savoy recalled that Jones made a call to a friend and after a short while, called 911 and reported that his "wife" had been shot. Savoy told the jury that before the police and paramedics arrived, Jones stuck his finger into the bullet wound on her face and threatened to harm her children if she ever told the police that Jones was the assailant. Instead, he made up the story about her going for a cigarette and being shot by an unknown assailant behind the apartment complex, which she then repeated to the police.

The trauma surgeon who examined and operated on Savoy on the night of her injury, testified that the gun shot damaged Savoy's spinal cord at level C-6, which would have completely incapacitated her legs and the majority of her ability to use her arms. He explained that the gun shot would have caused her to immediately lose sensation from her clavicle bone all the way down her body. In short, according to the trauma surgeon, "[w]here she got shot is where she dropped." As such, he concluded that Savoy's injuries were inconsistent with the story that she was shot outside the apartment and then ran into the bedroom through the backdoor.

## Sufficiency of the Evidence

In his first issue, Jones challenges the sufficiency of the evidence to establish his identity as the person who knowingly or recklessly caused Savoy's bodily

5

injury. According to Jones, the jury could not have found him guilty beyond a reasonable doubt given the lack of physical evidence linking him to the crime and Savoy's inconsistent statements regarding the identity of the perpetrator.

We review a challenge to the sufficiency of the evidence in the light most favorable to the verdict to determine if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010). The factfinder is the ultimate authority on the credibility of the witnesses and the weight to be given their testimony. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex. Crim. App. 1981); *see Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We give deference to the jury's responsibility to fairly resolve conflicting testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) If the record contains conflicting inferences, we must presume that the fact finder resolved such facts in favor of the verdict and defer to that resolution. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see Jackson*, 443 U.S. at 326. An appellate court determines "'whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Clayton*, 235

6

S.W.3d at 778 (quoting *Hooper*, 214 S.W.3d at 16–17). In viewing the record, "[d]irect and circumstantial evidence are treated equally: '[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13).

Based on the indictment in Jones's case, the State was required to prove that Jones intentionally and knowingly caused serious bodily injury to his girlfriend, Savoy, by using a deadly weapon— a firearm. *See* Tex. Penal Code Ann. § 22.02(a)(2). As noted above, on appeal, Jones only challenges the identity element of the offense. "[T]he State may prove the defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence." *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009).

There is direct evidence of Jones's identity as the person who shot Savoy. Savoy specifically identified Jones as the shooter and described how he used a firearm and shot her point blank in the face, rendering her paralyzed and disabled for life. Although Savoy initially informed officers that she was shot outside the apartment and did not implicate Jones as the shooter for several months, Savoy testified that she was afraid of what Jones would do to her children if she told the

truth. The jury could have believed Savoy's testimony that Jones had threatened her and that she was in fear for her life and the lives of her children.

Jones did not testify at the trial, but his conversation with the 911 operator and his initial statements to the police were admitted into evidence and provided to the jury. Jones informed the 911 operator that he was inside the apartment when Savoy ran inside and told him that she had been shot. Jones informed operators that he did not know who had shot Savoy. When police officers arrived, Jones's told them that Savoy ran into the apartment through the backdoor and into the bedroom after she had been shot. However, the trauma surgeon testified that Savoy was immediately paralyzed at the time of the gunshot and fell where she was shot, calling into question the credibility of Jones's version of the events. Whereas, the trauma surgeon's testimony bolstered Savoy's testimony suggesting her version of the events was more likely than what Jones had offered to officers. Moreover, officers found no blood on the exterior of the back door despite Savoy's reported bloody injuries. Officers found the back door of the apartment open, but the jury could have believed that this was the result of Jones' staging of the area. Giving proper deference to the role of the jury in evaluating the credibility of the evidence and the weight to give the evidence, we hold the evidence was sufficient for a

8

rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. We overrule issue one.

## Denial of Instruction and Motion for Mistrial

In his second issue, Jones complains the trial court erred when it denied his request for an instruction to the jury to disregard testimony to which the trial court sustained a hearsay objection. If a trial court rules that testimony heard by a jury should be excluded from the jury's consideration, the trial court should then (either upon request or sua sponte) direct the jury to disregard the at-issue testimony. *See Lollis v. State*, 232 S.W.3d 803, 810 (Tex. App.—Texarkana 2007, pet. ref'd); *Mitchell v. State*, 191 S.W.3d 219, 223 (Tex. App.—San Antonio 2005, pet. ref'd).

In this case, Savoy provided testimony about the circumstances following the shooting, including her rehabilitation in Houston. When questioned about Jones's actions after returning from Houston, Savoy began to respond but her response was interrupted by an objection:

> Q.    When you came back, what did the defendant do? When you came back from Houston, what did the defendant do?
>
> A.    I end up coming back. Like something happened out there, like somebody had said that he was talking about --
>
> [DEFENSE COUNSEL]:    Your Honor, I object.
>
> A.    -- marijuana.

9

Defense counsel then explained that he objected "to the hearsay statements[.]"The trial court sustained the objection. Thereafter, defense counsel asked that the jury be instructed to disregard the hearsay statements. The trial court responded that the witness did not actually make a hearsay statement due to the objection, so there was nothing for the jury to disregard. From our review of the record, it appears as though Savoy continued to testify while counsel was objecting and the trial court did not hear Savoy's response.

In any case, if the trial court erred by not issuing a properly requested instruction to disregard, such error will not result in reversal of the appellant's conviction unless the reviewing court is convinced that the error affected the appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *Rivera-Reyes v. State*, 252 S.W.3d 781, 786 (Tex. App.—Houston [14th Dist.] no pet.) ("The admission of inadmissible hearsay constitutes non-constitutional error subject to the harm analysis rule under Texas Rule of Appellate Procedure 44.2(b), which requires the reviewing court to disregard non-constitutional error that does not affect a criminal defendant's substantial rights.") An appellant's substantial rights are affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *Coggeshall v. State*, 961 S.W.2d 639, 643 (Tex. App.—Fort Worth 1998, pet.

10

ref'd). We will consider the error harmless, if after examining the record as a whole, we are reasonably assured the error did not influence the jury verdict or had but slight effect. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

Savoy's hearsay statement at issue did not directly implicate nor imply that Jones had committed an extraneous offense or a crime of any kind, just that someone said Jones was talking about marijuana. The jury had previously heard testimony from Savoy, without objection, that she and Jones had purchased and smoked synthetic marijuana. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (concluding that any error in admitting hearsay evidence was harmless in light of other properly admitted evidence proving the same fact); *Anderson v. State*, 717 S.W.2d 622, 627 (Tex. Crim. App. 1986) (en banc) (concluding that if the fact to which the hearsay relates is sufficiently proved by other competent and unobjected to evidence, then admission of the hearsay evidence is properly deemed harmless and does not constitute reversible error). The State did not emphasize nor mention the marijuana statement thereafter. Therefore, assuming error without finding such, we are confident that any error did not affect Jones' substantial rights. *See* Tex. R. App. 44.2(b); *Brooks*, 990 S.W.2d at 287; *Anderson*, 717 S.W.2d at 627. We overrule issue two.

11

In his third issue, Jones complains of the trial court's refusal to grant a mistrial after the trial court refused to instruct the jury to disregard Savoy's hearsay statement. Because we have concluded that any error did not affect Jones' substantial rights, we necessarily determine no error by the trial court in denying Jones' subsequent motion for mistrial. We overrule issue three.

Having overruled all of Jones' issues on appeal, we affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on May 13, 2016
Opinion Delivered January 25, 2017
Do not publish

Before McKeithen, C.J., Kreger and Johnson, JJ.