PD-1658-14

PD-1658-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/19/2014 12:54:23 PM
Accepted 12/29/2014 9:39:39 AM
ABEL ACOSTA
CLERK

# IN THE COURT OF CRIMINAL APPEALS
# OF AUSTIN, TEXAS

| | | |
|---|---|---|
| **EUGENE D. ESTERS,** | § | |
| **Appellant** | § | |
| | § | NO._____ |
| **vs.** | § | |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| **Appellee** | § | |

## ON PETITION FOR DISCRETIONARY REVIEW FROM THE DECISION OF THE COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS, AT FORT WORTH, TEXAS IN CAUSE NO. 02-13-00219-CR AFFIRMING APPELLANT'S CONVICTION AND SENTENCE IN CAUSE NO. 1263515D HON.ROBB CATALANO, PRESIDING FROM THE CRIMINAL DISTRICT COURT NO. THREE OF TARRANT COUNTY

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

**Richard A. Henderson**
**State Bar No. 09427100**

**RICHARD A. HENDERSON, P.C.**
**100 Throckmorton Street, Suite 540**
**Fort Worth, Texas 76102**
**817-332-9602 – Telephone**
**817-335-3940 – Facsimile**
***richard@rahenderson.com***

FILED IN
COURT OF CRIMINAL APPEALS

December 29, 2014

ABEL ACOSTA, CLERK

**ATTORNEY FOR APPELLANT,**
**EUGENE D. ESTERS**

# SUBJECT INDEX

TABLE OF AUTHORITIES........................................................................................ii

STATEMENT REGARDING ORAL ARGUMENT ...........................................1

STATEMENT OF THE CASE ..............................................................................1

STATEMENT OF PROCEDURAL HISTORY .....................................................2

GROUNDS FOR REVIEW ...................................................................................2

REASONS FOR REVIEW ....................................................................................3

      GROUND ONE..............................................................................................3

      GROUND TWO.............................................................................................5

CONCLUSION AND PRAYER............................................................................6

CERTIFICATE OF COMPLIANCE ....................................................................7

CERTIFICATE OF SERVICE...............................................................................7

APPENDICES .......................................................................................................8

Appendix "A"
(Opinion of the Court of Appeals Second District of Texas)

Appendix "B"
(Motion for Rehearing)

Appendix "C"
(Court's Order denying Appellant's Motion for Rehearing)

# **TABLE OF AUTHORITIES**

## CASES

*Crabtree v. State,* 389 S.W.3d 820 (Tex. Crim. App. 2012) ..................................... 5

*Ex parte White,* 211 S.W.3d 316 (Tex. Crim. App. 2007)......................................... 5

*Prudholm v. State,* 274 S.W. 3d 236 (Tex. App.— Houston 1st 2008)..................... 6

*Wooten v. State,* 400 S.W.3d 601 (Tex. Crim. App. 2013)......................................... 3

*Wooten v. State,* 400 S.W.3d 606 (Tex. Crim. App.2013)......................................... 5

## CODES

TEX. PENAL CODE ANN. §31.03(a) (4)(a) ................................................................. 5

TEXAS PENAL CODE 12.42 ........................................................................................ 6

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner believes that oral argument would aid the court in deciding the critical issue presented. The Court of Appeals and the State of Texas have admitted that the error presented was committed by the trial court. Oral argument would allow a full airing of the issue presented.

## STATEMENT OF THE CASE

On December 5, 2011, Appellant shot his estranged girlfriend, Jennifer Johnson, in front of her condo in East Fort Worth, as her mother, Della Johnson and several other witnesses looked on. Appellant also shot Della Johnson. (The couple had been together for six years and had recently separated. Appellant was sleeping in his vehicle in front of the condo. On the date in question, Jennifer had car trouble and tried to use jumper cables to start the car but Appellant took the cables and Jennifer and Della went to buy some new ones. Jennifer was attempting to start her car with the help of a neighbor, Carieta Cook, when Appellant approached. Appellant began asking when he could see his child and Jennifer responded that

1

they would work something out. (RR3:37). Appellant then began shooting. After Appellant stopped shooting, he put the gun to his head and pulled the trigger, but he was out of bullets. Appellant began screaming that a murder had been committed on Shady Lane while holding a Bible. Police arrived and arrested Appellant.

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals issued its memorandum opinion on October 30, 2014. Appellant's Motion for Rehearing was e-filed November 14, 2014 and was overruled on November 20, 2014. This Petition for Discretionary Review is timely if e-filed on or before December 22, 2014.

## GROUNDS FOR REVIEW

GROUND ONE: Is telling a father that they will "work something out" by the mother in response to a question of when the father can see his child sufficient to invoke sudden passion and require a jury instruction on sudden passion?

GROUND TWO: What level of proof is necessary in order to prove that an out of state conviction for grand theft is the equivalent of a third degree felony or higher in order to enhance the Texas punishment?

2

## REASONS FOR REVIEW

## GROUND ONE:

Appellant argued to the Court of Appeals that in the overall context of events, that this verbal exchange could have amounted to sudden passion which would require that the issue be submitted to the jury. *Wooten v. State,* 400 S.W.3d 601 (Tex. Crim. App. 2013).

In *Wooten,* the court said:

A murder committed under the " immediate influence of sudden passion arising from an adequate cause" is a second-degree felony carrying a maximum punishment of twenty years' imprisonment. Sudden passion is "passion directly caused by and arising out of provocation by the individual killed" which arises at the time of the murder.

Adequate cause is a "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." The defendant has the burden of production and persuasion with respect to

3

the issue of sudden passion. To justify a jury instruction on the issue of sudden passion at the punishment phase, the record must at least minimally support an inference:

1) that the defendant in fact acted under the immediate influence of a passion such as terror, anger, rage, or resentment;

2) that his sudden passion was in fact induced by some provocation by the deceased or another acting with him, which provocation would commonly produce such a passion in a person of ordinary temper;

3) that he committed the murder before regaining his capacity for cool reflection; and

4) that a causal connection existed " between the provocation, passion, and homicide."

It does not matter that the evidence supporting the submission of a sudden passion instruction may be weak, impeached, contradicted, or unbelievable. If the evidence thus raises the issue from any source, during either phase of trial, then the defendant has satisfied his burden of production, and the trial court must submit the issue in the jury charge— at least if the defendant requests it.

4

In this case, Appellant was given a vague response by the deceased as to when he could visit his child. Such a response could cause anger in an individual that could cause anger or resentment. Appellant requested the issue and was denied by the trial court, *Wooten v. State,* 400 S.W.3d 606 (Tex. Crim. App. 2013).

The Court of Appeals in its opinion stated that the response by the deceased was not adequate cause such that a jury instruction was required. Appellant asserts that the Court of Appeals was wrong in this evaluation and that, even if considered weak, the jury instruction was required.

**GROUND TWO:**

Appellant objected to the submission in the punishment charge of a California conviction of grand theft, contending that it was not the equivalent of a third degree felony in Texas and Appellant submitted a proposed charge that deleted the repeat offender notice which was refused by the trial court.

Appellant showed to the trial court that the California offense was most similar to a Texas state jail felony of Theft $1500-$20,000 under TEX. PENAL CODE ANN. §31.03(a) (4)(a).

State jail felonies cannot be used to enhance punishment as a repeat offender under Texas Penal Code 12.42. See *Ex parte White,* 211 S.W.3d 316 (Tex. Crim. App. 2007); *Crabtree v. State,* 389 S.W.3d 820 (Tex. Crim. App. 2012) and

5

*Prudholm v. State,* 274 S.W. 3d 236 (Tex. App.— Houston 1ˢᵗ 2008).

The Court of Appeals stated that since the California included prison time, then the offense could not be the equivalent of a Texas State jail felony Appellant would show that prison time does not a third degree felony or higher, make.

## CONCLUSION AND PRAYER

WHEREFORE, Appellant respectfully prays that this Court reverse the judgment of the Court of Appeals and remand this cause to that court and order that Appellant be given a new trial and for all other relief to which he is entitled.

Respectfully Submitted,

RICHARD A. HENDERSON, P.C.
Two City Place
100 Throckmorton Street, Suite 540
Fort Worth, Texas 76102
(Telephone) 817-332-9602
(Telecopier) 817-335-3940
*E-mail: richard@rahenderson.com*

By: _____
Richard A. Henderson
State Bar No. 09427100

**ATTORNEY FOR APPELLANT**

6

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex.R. App. Proc. 9.4(e), because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex.R.App.P. Rule 9.4(i), because it contains 1,456 words, excluding any parts exempted by Tex.R.App.Proc 9.4(i) (1), as computed by the word-count feature of Microsoft Office Word 2010, the computer program used to prepare the document.

_____
Richard A. Henderson

## CERTIFICATE OF SERVICE

A true copy of the Appellant's brief has been electronically served on opposing counsel, Mr. Charles Mallin, Assistant District Attorney, Chief of Appellant Section, Tarrant County District Attorney's Office, 401 W. Belknap Street, Fort Worth, Texas 76196 and mailed U.S. Regular Mail to Appellant, Mr. Eugene Esters, TDCJ #01856715, William B. Clements Unit, 9601 Spur 591, Amarillo, Texas 79107-9606 on this the 19th day of December 2014.

_____
Richard A. Henderson

7

# APPENDICES

# APPENDIX "A"

# OPINION OF
# COURT OF APPEALS
# SECOND DISTRICT OF TEXAS
# FORT WORTH



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00219-CR

EUGENE D. ESTERS | APPELLANT

V.

THE STATE OF TEXAS | STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
TRIAL COURT NO. 1263515D

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In three issues, Appellant Eugene D. Esters appeals his conviction for murder. We affirm.

---

[1]See Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

Esters lived with his girlfriend, Jennifer, for about four or five years. He moved out of their apartment about a month before her murder. Even after his move, he was allowed to stay there when Jennifer and her two children were gone and allowed to come by and see their two-year-old daughter, Sara,[2] in the morning before Jennifer's mother, Della, took the children to school.

On December 5, 2011, Della arrived back at the apartment after taking the children to school to discover that Jennifer and Esters had been involved in an argument about the ownership of a set of jumper cables. Shortly thereafter, Della, who was a secretary at Jennifer's business, drove Jennifer to work and later dropped her off at her apartment, noticing on the way to her own home that Esters's truck was heading toward the apartment. Puzzled over why Esters would be returning to Jennifer's apartment, Della called Jennifer, told her what she had seen, and stayed on the line with her. Jennifer told Della that she saw Esters enter the apartment garage, then get in his truck, park it, and wait there, but she asked Della not to call the police. Della decided to return to the apartment and stopped at a police substation on the way there but did not find any officers present. After Della arrived back at the apartment, Jennifer and a neighbor, Carrieta Cook, met Della at her car where Della could see Esters

_____
[2]We use a pseudonym for the child's name. *See* Tex. R. App. P. 9.8.

2

sitting in his truck across the parking lot from Jennifer's apartment. Esters next pulled his truck up behind the three women and said "Della, I wanted to know when I'll be able to see Sara." Della relayed the message to Jennifer, who was close by and who responded, "Gene, we will work out something." Without saying anything else, Esters exited his truck, drew a gun from his pocket, and shot Jennifer from several feet away; after she collapsed, Ester's approached Jennifer and shot her again. He then confronted Della and said, "[N]ow go put that on Facebook," and he shot her in the chest. Esters apparently then tried to shoot himself under his chin, but when the gun did not fire, he said, "[D]amn, I had a bullet for myself . . . . I killed the bitch, I told her I'd kill her." He then yelled for someone to call 911. Esters next told Della, "[S]it [your] stupid ass down before [you] bleed to death," and looking at Cook, he said "[B]itch, I ran out of bullets." Esters then put the gun in his truck, shouted "religious slurs," and stated, "I don't have anything else to live for." When the police arrived, he was compliant, offered no resistance, and told the officer, "I'm not going to do anything."

A jury convicted Esters of murder and assessed his punishment at life in prison. This appeal followed.

### III. Sudden Passion

In his first issue, Esters asserts that the trial court committed fundamental punishment charge error by denying his request for a sudden passion special issue. The defendant requested that the jury be instructed that if "the Defendant

3

has raised by a preponderance of the evidence the issue of sudden passion and you so find then the punishment range for this offense is that of a second degree," which was 2 to 20 years plus a fine. He further requested that "sudden passion" be defined as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." Esters argues that Jennifer's response—"[W]e will work something out"—to his inquiry about seeing Sara "could have amounted to sudden passion which would require that the issue be submitted to the jury." The State responds that there is no evidence that the murder occurred under the immediate influence of sudden passion arising from an adequate cause.

## A. Standard of Review

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id.*

## B. Requirements for Submission

An accused who successfully argues that murder was committed under the immediate influence of sudden passion arising from an adequate cause reduces the level of the offense from the first to the second degree, thereby reducing the possible punishment range. *Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013), *Trevino v. State*, 100 S.W.3d 232, 237 (Tex. Crim. App. 2003). The

4

instruction given to the jury in this regard is required if some evidence raises the issue, regardless of whether that evidence is contradicted, weak or impeached, but is not required to be given if the evidence is so contested, weak, or incredible such that it could not support a finding by a rational jury. *Davis v. State*, 268 S.W.3d 683, 693 (Tex. App.—Fort Worth 2008, pet. ref'd). Further, if the evidence, viewed in the light most favorable to the defendant, fails to raise the issue of sudden passion from adequate cause, the defendant is not entitled to an instruction. *See id.* at 698.

Certain evidentiary requirements are necessary for sudden passion to be submitted to the jury. Those are: (1) that the defendant in fact acted under the immediate influence of a passion such as terror, anger, rage, or resentment; (2) that his sudden passion was in fact induced by some provocation by the deceased or another acting with him, which provocation would commonly produce such a passion in a person of ordinary temper; (3) that he committed the murder before regaining his capacity for cool reflection; and (4) that a causal connection existed between the provocation, passion, and homicide. *See Wooten*, 400 S.W.3d at 605. Sudden passion is more than ordinary anger and does not include a cause of the defendant's own making. *Hernandez v. State*, 127 S.W.3d 206, 211 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *Nance v. State*, 807 S.W.2d 855, 861 (Tex. App.—Corpus Christi 1991, pet. ref'd). Further, the sudden passion must have arisen from adequate cause, which requires some evidence of the condition of the accused's mind at the time of the

5

offense. *Mitchell v. State*, 191 S.W.3d 219, 224 (Tex. App.—San Antonio 2005, pet. ref'd); *Naasz v. State*, 974 S.W.2d 418, 423 (Tex. App.—Dallas 1998, pet. ref'd).

## C. Analysis

With this legal backdrop, we will examine the evidence and determine if the submission of a sudden passion instruction was required. The only evidence proffered by Esters was the previously recounted exchange:

> [Esters to Della]–"Della, I wanted to know when I'll be able to see [Sara]."
>
> [Della to Jennifer]–"Jennifer, Gene wants to know when he'll be able to see [Sara]."
>
> [Jennifer to Esters]–"Gene, we will work out something."

The second element under *Wooten* requires that the provocation "would commonly produce such a passion in a person of ordinary temper." *See Wooten*, 400 S.W.3d at 605. Jennifer's response about working something out is not an unreasonable response such as "you'll never see your child again." It cannot be said that a person of ordinary temper would produce such sudden passion under these circumstances, and Esters cannot meet his burden under this element. Further, the fourth *Wooten* element requires that a causal connection exist between the provocation, the passion, and the homicide. *Id.* Here, following the murder, Esters attempted to shoot himself, and when this failed, he said "[D]amn, I had a bullet for myself." This clearly indicates that this act was planned and that he set out to kill himself after killing Jennifer, thus negating his attempt to

6

establish this fourth element of proof. Therefore, no error occurred in the omission of a sudden passion special instruction, and Esters's first issue is overruled.

## IV. A Prior Felony

In his second issue, Esters asserts that the trial court committed fundamental charge error by submitting a special issue inquiring of a prior felony, thereby enhancing punishment. Esters argues that a California conviction for grand theft was not the equivalent of the type of felony required for punishment enhancement in Texas. The State responds that the Texas Penal Code only requires the State to prove that an out-of-state conviction was punishable in the penitentiary of that State in order to meet the definition of "felony" for enhancement purposes.

### A. Analysis

Esters had been convicted of the offense of grand theft in California, which he argued was similar to a Texas state jail felony of theft between $1500 and $20,000, Tex. Penal Code Ann. § 31.03(a)(4)(A), and that such state jail felonies cannot be used for repeat offender enhancement purposes. *See Ex Parte White*, 211 S.W.3d 316 (Tex. Crim. App. 2007).

Punishment for a first degree felony offense can be enhanced to life imprisonment if it is shown that "the defendant has previously been finally convicted of a felony other than a state jail felony . . . ." Tex. Penal Code Ann. § 12.42(c) (West 2011 & Supp. 2014). The code further articulates that

7

any conviction not obtained from a prosecution under this [Penal] [C]ode shall be classified as follows: (1) 'felony of the third degree' if imprisonment in the Texas Department of Criminal Justice or *another penitentiary* is affixed to the offense as a possible punishment; (2) 'Class B misdemeanor' if the offense is not a felony and confinement in a jail is affixed to the offense as a possible punishment.

*Id.* § 12.41(1)–(2) (West 2011) (emphasis added). Referring to this section, our Court of Criminal Appeals has told us that

[T]he Legislature enacted a statute to deal specifically with the classification for enhancement purposes of convictions obtained outside the Penal Code . . . . [T]here can be no doubt that the Legislature intended to make convictions for felonies in federal courts as well as courts of other states available for enhancement purposes.

*Ex Parte Blume*, 618 S.W.2d 373, 376 (Tex. Crim. App. 1981). These convictions are contrasted with convictions whose punishment is confinement in a jail. Specifically, "penitentiary" refers to facilities run by the Texas Department of Corrections, that is, a facility run by the State of Texas, as opposed to a "county jail run by the local sheriff." *Smith v. State*, 789 S.W.2d 590, 592 (Tex. Crim. App. 1990) (Clinton, J. concurring). The same state prison–versus–county jail distinction is made in California. *See People v. Lopez*, 218 Cal. App. 4th Supp. 6, 160 Cal. Rptr. 3d 678, 681 (2013). Therefore, we must determine whether Esters's out-of-state conviction resulted in confinement in a California penitentiary, which would be classified then as a felony for enhancement purposes. An examination of Esters's pen packet, contained in an exhibit introduced by the State, indicates in the "Abstract Of Judgment" that he was the

8

subject of a "commitment to state prison." Therefore, this constitutes a "felony of the third degree" for purposes of the penal code section 12.41(1), and no charge error occurred. Esters's second issue is overruled.

## V. Autopsy Photos

Esters argues in his third issue that the trial court erred by admitting autopsy photos that were gruesome and unduly prejudicial.

### A. Standard of Review and Rule 403

The standard of review for a trial court's admission of evidence is abuse of discretion, and wide discretion is afforded to the trial judge. *Green v. State*, 934 S.W.2d 92, 101–03 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997); *Miller v. State*, 196 S.W.3d 256, 267 (Tex. App.—Fort Worth 2006, pet. ref'd); *Hale v. State*, 140 S.W.3d 381, 395 (Tex. App.—Fort Worth 2004, pet. ref'd). The trial court's decision should be reversed on appeal only if there is a showing of abuse of discretion. *Green*, 934 S.W.2d at 101–02; *Miller*, 196 S.W.3d at 267. Only if the court's decision falls outside the "zone of reasonable disagreement" has it abused its discretion. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1998) (op. on reh'g); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). This standard applies to the admission of photographs. *See Davis*, 268 S.W.3d at 683.

Evidence may be excluded under Texas Rule of Evidence 403 if its probative value is substantially outweighed by the danger of unfair prejudice. But this rule also favors the admission of relevant evidence, and such evidence is

9

presumed to be more probative than prejudicial. *See Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006), *cert. denied*, 549 U.S. 1056 (2006).

## B. Analysis

We begin our review with an examination of the autopsy photos in question. Those photos include: two close-ups of head wounds, a close-up of bullet fragments and two of unfragmented bullets, four close-ups of arm wounds, a side wound, what appears to be a leg wound, and the front view of the head and shoulders of the victim. All of the wound photos are "clean" in that no blood is depicted and no internal tissue is shown. Dr. Lloyd White, a pathologist and deputy medical examiner for Tarrant County, took the photographs. He examined and photographed six wounds in connection with the formation of his opinion that death resulted from "penetrating handgun wounds of the chest" and that the manner of death was a homicide. He testified that he typically takes photographs during autopsies to help him explain the results of the autopsy if he is called to trial, such as occurred in this case. A review of his testimony reveals that he explained to the jury the six wounds in question including their location, entry and exit, and possible internal damage caused thereby.

An examination of the case law in this area shows that much more graphic autopsy results have been deemed admissible than the bullet wounds shown in the subject photographs. We note that there is no depiction of dissection of the body, removed organs, or exposed body cavities. For example, in *Davis v. State*, 313 S.W.3d 317 (Tex. Crim. App. 2010), a cross section of the victims tongue

10

was properly admitted when necessary to show an injury not otherwise visible. In *Rayford v. State*, 125 S.W.3d 521 (Tex. Crim. App. 2003), depictions of autopsy procedures, including removed organs, were properly admitted. Nothing of this nature is contained in the autopsy photos in this case. Additionally,

> [a] court may consider many factors in determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice, including: the number of exhibits offered, their gruesomeness,[3] their detail, their size, whether they are in color or black-and-white, whether they are close up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case.

*See Davis*, 313 S.W.3d at 331.

Turning to the above listed factors, only eleven autopsy photographs out of over 140 State's exhibits were introduced. Under the commonsense understanding of the word they cannot be said to be "gruesome"; they are detailed only to the extent that they are well-photographed pictures of clean wounds that depict nothing under the surface of the skin and are blown-up pictures on boards for purposes of explanation by the assistant medical examiner. The record does not indicate whether the photos were color or black-and-white. All but one are close ups depicting no more of the body than necessary; the photographs of the arm and leg suggest that the body is uncovered but this is not shown in the photographs. Lastly, it would theoretically

---

[3]Merriam Webster's Collegiate Dictionary defines "gruesome" as "inspiring horror or repulsion."

11

be possible, but more difficult, for the assistant medical examiner to testify about the location and description of the wounds without the photographs.

Considering the foregoing factors, the previously discussed case law concerning the admission of autopsy photographs, and the importance of the fact that these autopsy photos are simply not "gruesome," we hold that the trial court did not abuse its discretion in admitting these photographs in connection with the testimony of the assistant medical examiner in explaining the wounds and their connection to the cause of death. Esters's third issue is overruled.

## VI. Conclusion

Having overruled Esters's three issues, we affirm the judgment of the trial court.

PER CURIAM

PANEL: MCCOY, J.; LIVINGSTON, C.J.; and MEIER, J.

LIVINGSTON, C.J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 30, 2014

12



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00219-CR

| | | |
|---|---|---|
| Eugene D. Esters | § | From Criminal District Court No. 3 |
| | § | of Tarrant County (1263515D) |
| v. | § | October 30, 2014 |
| | § | Per Curiam |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

PER CURIAM

# APPENDIX "B"

# MOTION FOR REHEARING

## IN THE COURT OF APPEALS
## FOR THE SECOND DISTRICT OF TEXAS
## FORT WORTH, TEXAS

### NO. 02-13-00219-CR

EUGENE D. ESTERS       ][
      APPELLANT       ][     **From Criminal District Court No. 3**
      ][
      ][     **of Tarrant County**
**vs.**       ][
      ][     **Trial Court Case No. 1263515D**
      ][
**THE STATE OF TEXAS,**       ][
      APPELLEE

## <u>APPELLANT'S MOTION FOR REHEARING</u>

TO THE HONORABLE COURT OF APPEALS:

COMES NOW, Eugene D. Esters, Appellant in the above-styled and numbered appeal, and, pursuant to Rule 49.5(c) of the Texas Rules of Appellate Procedure, hereby files this Motion for Rehearing, and asks the Court to reconsider and withdraw its opinion of October 30, 2014 and shows as follows:

1. Appellant respectfully requests the court to reconsider its opinion ruling against Appellant and withdraw its opinion and issue a new opinion granting him relief.

---

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully requests the court to reconsider its opinion of October 30, 2014 and prays the court to withdraw its opinion and submit a new opinion in favor of Appellant.

Respectfully submitted,

RICHARD A. HENDERSON P.C.
100 Throckmorton Street, Suite 540
Fort Worth, Texas 76102
Telephone: 817-332-9602
Facsimile: 817-335-3940
richard@rahendeson.com

Richard A. Henderson
State Bar No. 09427100

ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

A true copy of the Appellant's Motion for Rehearing has been electronically served on opposing counsel, Mr. Charles Mallin, Assistant District Attorney, Chief of Appellant Section, Tarrant County District Attorney's Office, 401 W. Belknap Street, Fort Worth, Texas 76196, via the State's e-mail address, coaappellatealerts@tarrantcounty.com and mailed, U.S. Regular Mail to Appellant, Eugene D. Esters, TDCJ #01856715, William B. Clements Unit, 9601 Spur 591, Amarillo, Texas 79107-9606 on this the 14th day of November 2014.

Richard A. Henderson

# APPENDIX "C"
# ORDER DENIED
# MOTION FOR REHEARING



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH
### NO. 02-13-00219-CR

EUGENE D. ESTERS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
TRIAL COURT NO. 1263515D

------------

## ORDER

------------

We have considered the "Appellant's Motion For Rehearing."

It is the opinion of the court that the motion for rehearing should be and is hereby denied and that the opinion and judgment of October 30, 2014, stand unchanged.

The clerk of this court is directed to transmit a copy of this order to the attorneys of record.

DATED November 20, 2014.

PER CURIAM

PANEL: MCCOY, J.; LIVINGSTON, C.J.; and MEIER, J.